SCHOTT, Judge.
This is an appeal by defendants, Liberty Mutual Insurance Company, David C. Kelly and Avis Rent A Car System, Inc., from the judgment of the trial court rendered on a jury verdict of $30,000 in favor of plaintiff, Mrs. Jessie B. Allen. Plaintiff answered the appeal seeking an increase in the award.
The judgment against Avis must be reversed for the reason that it never became a litigant at any time in this matter. The plaintiff did not pray for judgment against it, it made no appearance and was, therefore, never subject to the jurisdiction of the trial court.
The only real question for our consideration is the amount of the award for general damages, no claim having been made by plaintiff for special damages.
Plaintiff’s claim arose from a two car accident which occurred in the City of New Orleans on January 8, 1970, when her car was struck from the rear by a following vehicle driven by defendant Kelly, with force sufficient to break the front seat from its attachment to the body of the car and to throw plaintiff and her passenger to the rear seat.
*615 Subsequently, plaintiff was taken to her residence. Later, on contacting her family physician, Dr. Stanton Middleton, she was instructed to go to Baptist Hospital. At this hospital plaintiff was examined, given oral medication, instructed to apply heat to the affected areas of her body and sent home for bed rest.
Dr. Middleton, who had treated plaintiff since January, 1966, after examining plaintiff’s neck on January 12, 1970, referred plaintiff to Dr. Kenneth Saer; however, she was seen, examined and treated by Dr. Claude Williams, another orthopedic surgeon in Dr. Saer’s office. Dr. Middleton testified he did not see plaintiff subsequently for any injuries referable to the accident, but he did see plaintiff again on November 24, 1971, when Dr. Middleton diagnosed that she was suffering from arteriosclerosis. At the time of the trial on March 23, 1972, plaintiff was confined to her bed still under the care of Dr. Middleton. Unable because of her heart disease to attend the trial, her testimony was given by deposition and read to the jury.
Dr. Williams testified that he first saw plaintiff on January 14, 1970, examined her and had X-ray films taken of her cervical and lumbar spine. The films were negative but her neck muscles were sore and her low back tender. No spasm was present. He recommended that she continue bed rest at home, the medication prescribed at Baptist Hospital, and the application of heat to the sore muscles. Although she was instructed to return in two weeks, she did not return to him for further treatment. The next time he saw plaintiff was at the request of defendants’ attorney on May 27, 1970. At this time she responded to palpation of muscles in her neck as painful even when touched very lightly with the fingertips. A similar response was elicited on examination of her low back area. The doctor testified that on the second examination he could find no objective evidence of muscular injury. According to this physician, plaintiff represented to him “that she was unable to do anything” although the evidence clearly shows she was at the time working at least two hours, and on occasions as much as four hours, a day as a cashier at a restaurant.
About one week after the accident plaintiff contacted Dr. Robert Azar, an ophthalmologist, with the complaint of loss of vision after the accident. He testified that in January, 1968, he had diagnosed plaintiff to have cataracts and that between January, 1968, and January, 1970, there had been no significant change in the size of the cataracts. But in July, 1970, he found a significant change in their size. The next examination of December, 1970, showed further growth of the cataract in the left eye and as of February, 1971, it had grown even larger. He further testified that plaintiff’s sight deficiency in her right eye could be corrected by eye glasses to 20/20, but the left eye even with glasses could not be corrected to less than about 50% impairment. Surgery was not recommended at that time. Dr. Azar stated that a collision such as experienced by the plaintiff could cause aggravation of the cataracts although he stated there is no way to determine exactly what did cause the acceleration of their growth.
The plaintiff visited Dr. Blaise Salatich on January 21, 1970, for examination and treatment of her injuries. He referred her to Dr. Joseph V. Hopkins, a radiologist, for X-ray studies.
Dr. Hopkins took extensive X-ray pictures of the plaintiff’s cervical, thoracic and lumbar spine. Without discussing at length the X-ray findings of Dr. Hopkins, it is sufficient to state that the X-ray films were negative of pathology with the exception that one view of the cervical spine demonstrated a limitation of forward motion that could be associated with muscle spasm. He also testified that one of the views taken on the occasion of Dr. Williams’ examination of plaintiff also demonstrated this same finding. This was disputed by Dr. Williams.
*616 In his initial examination of plaintiff on January 21, 1970, Dr. Salatich diagnosed plaintiff’s injuries as a whiplash type injury of the cervical spine, a minimal to moderate thoracic syndrome, and a moderate whiplash type injury to the lumbo-sacral spine, all involving stretching and tearing of the ligaments and muscles. He treated her with oral medication, including muscle relaxants, analgesics and a salve; he recommended that she should restrict her physical activities and prescribed diathermy treatment.
During the course of Dr. Salatich’s treatment the plaintiff received 69 diathermy applications and on 26 of these office visits she was seen by the doctor. He testified that during the course of his treatment at times he noted improvement, while at other times he noted a worsening of her condition. On November 18, 1970, Dr. Salatich fitted plaintiff with a cervical collar because she had not responded to the treatment given and on February 7, 1971, prescribed a corset for her. A second corset was prescribed on April 7, 1971. She was advised to wear the collar and corset at all times. He never recommended cervical or lumbar traction or hospitalization.
Plaintiff was treated by Dr. Salatich until January, 1972, when she had a heart attack. It was Dr. Salatich’s conclusion that Mrs. Allen would never be as she was just before the accident; that she may stay the way she is now or she may get progressively worse; that her prognosis was unfavorable.
Plaintiff’s two daughters, a granddaughter and her guest passenger testified to the effect that before the accident plaintiff was well, active and did her own housework, but after the accident she was unable to do any work, had to have assistance in her housekeeping chores and was inactive and irritable.
An award of $30,000 to this 66 year old plaintiff for the injuries described is grossly excessive. While she sustained injuries to her cervical, thoracic and lumbar spine which caused her to suffer pain and discomfort over an extended period of time and to remain under the treatment of her physician for over two years after the accident when she had a heart attack (unrelated to the accident) she was never hospitalized, never required traction or surgical procedures and proved no permanent injury from the accident. It is also pertinent that the jury did not have the advantage of seeing and hearing the plaintiff since her testimony was in the form of a deposition. Considering these factors and noting decisions of this Court, such as Hebert v. Perkins, 260 So.2d IS (1972); Abadie v. Employers Group Insurance Company, 250 So.2d 84 (1971); and Matthews v. New Orleans Public Service, Inc., 239 So.2d 420 (1970), we find an award of $12,000 is fair, adequate and compensatory under the circumstances and that such an award does substantial justice between the parties.
For the foregoing reasons, the judgment appealed from in favor of plaintiff and against Avis Rent A Car Systems, Inc., is reversed. The judgment rendered in favor of plaintiff and against Liberty Mutual Insurance Company and David C. Kelly in the amount of $30,000 is amended by reducing the amount thereof to $12,000 and as amended, the judgment is affirmed. Plaintiff-appellee is to pay all costs of this appeal. Defendants-appellants are to pay all other court costs.
Reversed in part; amended in part; and affirmed.
BAILES, J., dissents with written reasons.